IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MICHAEL & TIFFANY FRYE,

    Plaintiffs,

    v.                                             Civ. Action No. 3:10-cv-39

DAN RYAN BUILDERS, INC.,
FRALL FOUNDATION COATING, INC.,
ALUMINATORS, INC., and
RICHARD B. STINE, INC.,

    Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING, AS FRAMED, DEFENDANT, DAN RYAN BUILDERS', INC. AND INTERESTED PARTY, BOWLES RICES' MOTION TO QUASH AND/OR MODIFY SUBPOENA

This matter comes before the Court on Bowles, Rice, McDavid, Graff & Love LLP's (hereinafter "Bowles Rice") Motion to Quash Subpoena Duces Tecum and Defendant, Dan Ryan Builders's, Inc., Motion to Quash and/or Modify Plaintiffs' Subpoena Duces Tecum both filed November 23, 2010.[1] The Court held an evidentiary hearing and argument on both motions on January 5, 2011. Plaintiffs, Michael and Tiffany Frye, appeared by Kirk H. Bottner, Esq. by telephone. Defendant, Dan Ryan Builders, Inc. (hereinafter "DRB"), appeared by Susan R. Snowden, Esq., in person. Interested Party, Bowles, Rice, appeared by William J. Powell, Esq., in person. Defendant, Richard B. Stine, Inc., appeared by Jeffrey W. Molenda, Esq., by phone. Defendant, Frall Foundation Coating, Inc., appeared by John O. Easton, Esq., by phone. The testimony of Tracey A. Rohrbaugh, Esq. was taken and Bowles Rice tendered Exhibit 1 the "Informed Consent," which was admitted into evidence. No other testimony was taken nor was

---

[1] Dkt. Nos. 66 & 67, respectively.

any other evidence adduced.

## I. INTRODUCTION

A.  Background

This action was initially filed on March 5, 2010 in the Circuit Court of Berkeley County, West Virginia alleging breach of contract violations arising out of alleged negligent construction of a home. Defendants timely removed the litigation pursuant to 28 U.S.C. § 1441(a) by alleging diversity jurisdiction.[2] DRB and Bowles Rice filed their Motions requesting the Court to quash or, alternatively, to modify the subpoena served upon Bowles Rice.

B.  The Motions

Bowles Rice's Motion to Quash Supoena Duces Tecum.[3]

DRB's Motion to Quash and/or Modify Plaintiffs' Subpoena Duces Tecum.[4]

C.  Decision

Defendant, Dan Ryan Builders's, Inc., Motion to Quash and/or Modify Plaintiffs' Subpoena Duces Tecum is **GRANTED AS FRAMED** because execution of the 2001 Informed Consent Agreement did not, in subsequent litigation filed years later alleging defective construction, waive the attorney-client privilege and work product doctrine protections, as to the subsequent litigation.

Bowles Rice's Motion to Quash is also **GRANTED AS FRAMED** for the same reasons.

## II. FACTS

---

[2] Dkt. No. 1.

[3] Dkt. No. 66.

[4] Dkt. No. 67.

2

1. On November 23, 2010, Bowles Rice filed its Motion to Quash Subpoena Duces Tecum.[5]

2. DRB also filed its Motion to Quash and/or Modify Plaintiffs' Subpoena Duces Tecum on November 23, 2010.[6]

3. The Court entered an Order on November 30, 2010 setting an evidentiary hearing and argument on both Motions.

4. Bowles Rice filed a Motion to Continue the Evidentiary Hearing on December 3, 2010, and such Motion was granted on December 6, 2010.[7]

5. Plaintiffs filed their Memorandum in Response to Bowles Rice's Motion on December 3, 2010.[8]

6. Plaintiffs filed their Memorandum in Response to DRB's Motion on December 7, 2010.[9]

7. DRB filed its Reply to Plaintiffs' Response in Opposition on December 9, 2010.[10]

8. Bowles Rice filed its Reply to Plaintiffs' Response on December 10, 2010.[11]

9. On January 5, 2011, the evidentiary hearing and argument was held.

---

[5] Dkt. No. 66.

[6] Dkt. No. 67.

[7] Dkt. Nos. 72 & 74, respectively.

[8] Dkt. No. 73.

[9] Dkt. No. 75.

[10] Dkt. No. 76.

[11] Dkt. No. 77.

10. Tracey A. Rohrbaugh, Esq., testified that she, through her employment at Bowles Rice, entered into an attorney-client relationship with Dan Ryan Builders as its attorney in approximately 2009. Ms. Rohrbaugh testified she became aware of a real estate closing that was handled by Bowles Rice on behalf of DRB and Plaintiffs subsequent to that engagement by DRB. Ms. Rohrbaugh further asserted that a deceased member of her firm conducted the real estate closing and that the civil action currently filed by Plaintiffs is unrelated to the 2001 real estate closing. Ms. Rohrbaugh stated the Bowles Rice firm considered the representation of the matter of the Fryes concluded in 2001 and, therefore, the real estate closing file was closed in that year. Additionally, Bowles Rice, through counsel, relayed that it did not object to any part of its file or any testimony under a subpoena related to the original real estate transaction being disclosed.

### III. DRB MOTION TO QUASH AND/OR MODIFY THE SUBPOENA AND BOWLES RICE'S MOTION TO QUASH THE SUBPOENA

A. Contentions of the Parties

**1. Bowles Rice's Motion to Quash Supoena Duces Tecum**

Bowles Rice advances two arguments in support of its Motion to Quash. It argues the "subpoena duces tecum improperly seeks communications protected by the attorney-client privilege...." See Bowles Rice's Mot., Pg. 7 (Dkt. 66). Particularly, Bowles Rice contends "[d]uring the course of its representation of DRB, Bowles Rice has received confidential communications from DRB and its agents for the purpose of seeking legal advice" and "there has

been no express or implied waiver of the attorney client-privilege with respect to these communications." Id. at 8. Bowles Rice asserts "Plaintiffs' argument that by signing an informed consent form [] effectively waived [DRB's] attorney-client privilege with Bowles Rice for all future proceedings, including litigation, defies logic and has no merit." Id. at 9. Bowles Rice also argues the subpoena must be quashed because it seeks production of information protected by the work product doctrine. Bowles Rice contends Plaintiffs' "only seek protected work-product of Bowles Rice for which [Plaintiffs] could not have substantial need." Id. at 12. Therefore, Bowles Rice requests the subpoena be quashed.

In response, Plaintiffs argue "Bowles Rice cannot now attempt to assert the very privileges that they [sic] themselves [sic] informed the parties to this case would be waived and inapplicable." See Pls.' Resp., Pg. 4 (Dkt. 73). Plaintiffs also contend Rule 45 of the Federal Rules of Civil Procedure does not support Bowles Rice's position because a "waiver is contained in the Informed Consent to Representation Agreement" and "[DRB] knowingly consented after consultation and [after] being informed of its right to consult with a lawyer of their [sic] own choosing about the legal effect of the [Agreement], to voluntarily waive any rights of confidentiality between the parties to the real estate transaction in the event a future dispute arose." Id. at 5-6. Plaintiffs assert they are "entitled to information that would be considered attorney work product because [it] was knowingly prepared as the result of an improper and prohibited legal representation contrary to a contract with a former client and contrary to the interests of a former client." Id. at 11. Consequently, Plaintiffs request the Court to deny Bowles Rice's Motion to Quash.

In its Reply, Bowles Rice maintains its argument that DRB's attorney-client privilege is

still intact because the Informed Consent language creates only a "narrowly tailored waiver of the attorney-client privilege" and "only applies to confidences shared among the parties to the transaction...that took place *during the real estate transaction eight years ago*." See Bowles Rice's Reply, Pg. 3 (Dkt. 77) (emphasis in original). Bowles Rice also argues "the subpoena decus [sic] tecum runs afoul of the work product doctrine by demanding the mental impressions of Bowles Rice in the form of its selections and organization in its command for production of 'all records or information that would be considered work product.'" Id. at 6. Lastly, Bowles Rice contends it has a duty to invoke the attorney-client privilege under Rule 1.6 of the West Virginia Rules of Professional Conduct.

### 2. DRB's Motion to Quash and/or Modify Plaintiffs' Subpoena Duces Tecum

In support of its Motion, DRB proffers three arguments. First, DRB argues the issued subpoena should be "quashed or modified by this Court as [sic] it is clearly invasive of the attorney-client privilege." See DRB's Mot., Pg. 5 (Dkt. 67). Specifically, DRB argues that "documents exchanged between Bowles [Rice] and DRB,..were authored or received by counsel in the scope of representation, dealt with the subject of representation, and were generated with a mutual expectation of confidentiality." Id. 6. Second, DRB contends that the "documents requested by the subpoena duces tecum are protected from compelled disclosure as attorney work product." Id. at 7. Lastly, DRB argues that because the subpoena is without temporal and substantive limitations it "should be quashed or modified as it is overly broad and seeks to compel the production of irrelevant documents." Id. at 8.

In opposition, Plaintiffs argue the subpoena, as issued, "does not improperly seek communications that are protected by attorney-client privilege as [sic] there was a waiver by

6

[DRB]." See Pls.' Resp., Pg. 6 (Dkt. 75). Plaintiffs contend that the language of the "Informed Consent Agreement" signed in 2001, does not indicate that "the waiver only applies to communications or actions that occurred during the [real estate] closing." Id. at 7. Plaintiff adamantly asserts that "the plain language of the consent agreement clearly states that no communications to [Bowles Rice] will be confidential." Id. Accordingly, Plaintiff states that "[DRB] knowingly gave up this right to refuse to disclose the requested information when it signed the Informed Consent to Representation Agreement." Id. at 12. Plaintiffs counter DRB's second argument by asserting Plaintiffs "are entitled to information that would be considered attorney work product because the work product was knowingly prepared as the result of an improper, prohibited and fraudulent legal representation contrary to a contract with a former client and contrary to the interests of a former client." Id. at 16. Plaintiffs also argue the subpoena is limited in time and in subject matter to information relevant to the case, therefore, DRB's Motion should be denied.

In its Reply, DRB "confirms its assertion of the attorney-client privilege as to any communications associated with the instant litigation." See DRB's Reply, Pg. 1-2 (Dkt. 76). DRB contends no waiver of the attorney-client privilege occurred because, under West Virginia law, "waiver requires the voluntary relinquishment of a known right...[and] at no time [did] DRB voluntarily relinquish[] the privilege as it applied to this litigation." Id. DRB contends the execution of the "Informed Consent to Representation Agreement" did not constitute a voluntary relinquishment of the privilege relating to the current litigation. Moreover, DRB argues it had "an expectation that communications between it and its counsel, associated with the present suit" fell outside of the "Informed Consent to Representation Agreement's" scope. Id. at 2.

7

B.  Discussion

Rule 45 of the Federal Rules of Civil Procedure governs the issuance of subpoenas. Fed. R. Civ. P. 45(a)(1)(A)(iii) requires the production of documents within a subpoenaed party's possession, custody, or control.  A person in responding to a subpoena duces tecum, however, may invoke privilege.  Fed. R. Civ. P. 45(c)(3)(A)(iii) specifically provides "on timely motion, the issuing court must quash or modify a subpoena that requires disclosure of privileged or other protected matter, if no exception or waiver applies."  The party claiming the privilege has the burden of establishing the essential elements of the privilege. United States v. Construction Prods. Research, 73 F.3d 464, 473 (2d Cir. 1996).  Furthermore, Rule 45(d)(2) requires that the party claiming a privilege prepare a privilege log detailing "the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim." Fed. R. Civ. P. 45(d)(2).  Failure to submit a privilege log may be deemed a waiver of the underlying privilege claim. In re Grand Jury Subpoena, 274 F.3d 563, 576 (1st Cir. 2001).

In terms of claiming privilege, in diversity cases such as this one, the Court applies state law to issues concerning attorney client privilege and federal law to assertions of the work product doctrine. Nicholas v. Bituminous Cas. Co., 235 F.R.D. 325, 329 n. 2 (N.D.W.Va. 2006).

The West Virginia Supreme Court of Appeals has held there are three elements necessary to the assertion of privilege: "(1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from the attorney in his capacity as a legal advisor; (3) the communication between the attorney and client must be intended to be confidential." State ex rel. Med. Assur. of W. Va., Inc. v. Recht, 213 W. Va. 457,

466, 583 S.E.2d 80, 89 (2003).

The work product doctrine protects the work of the attorney done in preparation for litigation. Fed. R. Civ. P. 26(b)(3). Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and mental impressions of an attorney. Hickman v. Taylor, 329 U.S. 495, 510, 67 S. Ct. 385 (1947). The Fourth Circuit has described the work product doctrine as follows:

> Under the work product rule, an attorney is not required to divulge, by discovery or otherwise, facts developed by his efforts in preparation of the case or opinions he has formed about any phase of the litigation...fact work product is discoverable only upon a showing of both a substantial need an an inability to secure the substantial equivalent of the materials by alternate means without undue hardship. Opinion work product is even more carefully protected, since it represents the thoughts and impressions of hte attorney...an attorney's thoughts are inviolate,...and courts should proceed cautiously when requested to adopt a rule that would have an inhibitive effect on an attorney's freedom to express and record his mental impressions and opinions without fear of having these impressions and opinions used against the client. As a result, opinion work product enjoys nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances.

Chaudhry v. Gallerizzo, 174 F.3d 394, 403 (4th Cir. 1999).

"In showing a substantial need for fact work product, the movant must specifically articulate the necessity for the documents or other tangible things...and must also demonstrate why or how alternative sources for obtaining the substantial equivalent are unavailable." Tustin v. Motorists Mutual Insurance Co., 5:08-cv-111, 2009 U.S. Dist. LEXIS 4853, at *13-14 (N.D. W. Va. Jan. 23, 2009). A non-exhaustive list of factors to be assessed in determining substantial need includes: 1) the importance of the materials to the party seeking them for case preparation; 2) the difficulty the party will have obtaining them by other means; and 3) the likelihood that the party,

even if he obtains the information by independent means, will not have the substantial equivalent of the documents he seeks. Fed. R. Civ. P. 26(b)(3), advisory committee's note, 1970 Amendments.

When a party refuses to produce documents during discovery on the basis that they are privileged or protected, it has a duty to particularize that objection within the 30-day time period provided for discovery responses. Fed. R. Civ. P. 26(b)(5) (2010); Fed. R. Civ. P. 34(b)(2). To qualify as privileged work product, the document must be prepared "because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation. National Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc., 967 F.2d 980, 984 (4th Cir. 1992). The burden is on the party resisting discovery to show that the documents are protected. See United States v. (Under Seal), 748 F.2d 871, 876 (4th Cir. 1984). LR Civ. P. 26.04, in relevant parts, also provides:

> (a)(1) Waiver: Objections to disclosures or discovery that are not filed within the response time allowed by the Federal Rules of Civil Procedure, the scheduling order(s), or stipulation of the parties pursuant to Fed. R. Civ. P. 29, whichever governs, are waived unless otherwise ordered for good cause shown.
>
> (a)(2)(i)(A) Claims of Privilege: Where a claim of privilege is asserted in objecting to any means of discovery or disclosure including, but not limited to, a deposition, and an answer is not provided on the basis of such assertion [t]he attorney asserting the privilege shall identify the nature of the privilege (including work product) that is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked and certify the attorney had reviewed each document for which privilege is asserted

LR Civ. P. 26.04 (a)(1), (2)(i)(A).

"As the attorney-client privilege and the work product exception may result in the exclusion of evidence which is otherwise relevant and material and are antagonistic to the notion of the fullest disclosure of the facts, courts are obligated to strictly limit the privilege and exception to the purpose for which they exist." State ex. rel. United States Fidelity and Guar. Co. v. Canady, 194 W. Va. 431, 438, 460 S.E.2d 677, 684 (1995). The person asserting the privilege has the burden of showing it applies. Id.

Initially, the Court notes that both DRB's and Bowles Rice's Motions are jointly considered because of the similarity of the parties' positions.

The parties in this case do not agree as to the scope of the waiver language in the Informed Consent to Representation of all Parties Real Estate Transaction/Loan document (hereinafter "the Agreement") which was executed in 2001. The waiver language in dispute is as follows:

> Paragraph 2. Among the parties, no communications to the firm will be considered confidential. However, all such communications will be kept confidential with respect to anyone not a party to the transaction. Should a dispute arise, a member of the firm may be called as a witness by any of the parties to testify about any conversation or actions with [sic] took place concerning this real estate transaction.

See DRB's Mot., Exhibit A (Dkt. 75-1).

Plaintiffs argue the plain language of the Agreement regarding the waiver of confidentiality is "very broad and contains no time limitations or any other limitations of any kind." See Pls.' Resp., Pg. 2 (Dkt. 75). In contrast, DRB and Bowles Rice argue the Agreement was limited to documents and communications disclosed in solely the real estate transaction which occurred on December 20, 2001. Plaintiffs' interpretation of the waiver language is unrealistic. Plaintiffs,

11

additionally, make much ado about Bowles Rice's and DRB's perpetuation of a fraud upon Plaintiffs by failing to disclose the long-standing history between Bowles Rice and DRB.

Notwithstanding Plaintiffs' complaints, the issue before the Court is: whether the Agreement, as executed in 2001, effectively renounced DRB's right to protection from disclosure under the attorney-client privilege and work product doctrine ten years later. The Court is inclined to disagree with Plaintiffs' position because Plaintiffs take far too broad a stance to uphold. First, the Agreement was executed in 2001 to provide informed consent to both the Plaintiffs, as well as, DRB that Bowles Rice would be the real estate attorney in that particular *real estate transaction*. (emphasis added). The waiver language contained in the Agreement is independent from Bowles Rice's ten-year-later representation of DRB. Second, while the waiver language exists, the Court finds the Agreement does not transcend the boundaries of the real estate closing so as to waive the attorney-client privilege and work product doctrine protections afforded to DRB in the current dispute. DRB sought legal advice from Bowles Rice regarding the dispute about the construction of the home in question. Both DRB and its attorney from Bowles Rice, Ms. Rohrbaugh, contemplated that the attorney-client relationship existed and intended their communications to be confidential. There has been no current express or implied waiver of this privilege and, accordingly, Plaintiffs' argument in this regard must fail. See In re von Bulow, 828 F.2d 94, 100 (2d Cir. 1987) (finding administration of privilege in courts requires recognition that 'sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.") (quoting Upjohn Co. v. United States, 449 U.S. 383, 389 (1981)).

Plaintiffs' argument regarding waiver of the work product doctrine protection similarly

falters from the same deficiencies. Plaintiffs contend the attorney work product should be produced because it was "knowingly prepared as the result of an improper and prohibited legal representation...." See Pls.' Resp., Pg. 11 (Dkt. 5). Both DRB and Bowles Rice assert Plaintiffs seek protected documents and, that although the protection is not absolute, Plaintiffs have not shown the requisite substantial need to gain access to such documents. Here again, the Agreement was limited in scope to that particular real estate transaction which occurred on December 20, 2001. The Court finds there has been no express or implied waiver of this protection by DRB's execution of the Agreement. Therefore, the attorney work product protection as to the current dispute is intact. Bowles Rice and DRB, however, are not in full compliance with the Federal Rules of Civil Procedure. Rule 45(d)(2)(A)(ii) requires one withholding subpoenaed information under a claim that it is privileged "to describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." In this case, neither Bowles Rice nor DRB have prepared a privilege log as required under Fed. R. Civ. P. 45(d)(2). This is the rare exception, however, which proves the rule. Here, there are two separate and distinct files: 1) the 2001 real estate file and 2) the file related to this litigation. There is no attorney-client privilege or work product doctrine in the real estate closing file. Both attorney-client privilege and work product doctrine are in the entire litigation file. Therefore, in this one-of-a-kind situation, no privilege log is necessary.

C.  Decision

Defendant, Dan Ryan Builders's, Inc., Motion to Quash and/or Modify Plaintiffs' Subpoena Duces Tecum is **GRANTED** as follows: all documents related to the 2001 real estate

transaction shall be produced. No documents related to the representation of DRB by Bowles Rice in this litigation shall be produced.

Bowles Rice's Motion to Quash is also **GRANTED** as follows: all documents related to the 2001 real estate transaction shall be produced. No documents related to the representation of DRB by Bowles Rice in this litigation shall be produced.

Filing of objections does not stay this Order.

Any party may, within fourteen (14) days after being served with a copy of this Order, file with the Clerk of the Court written objections identifying the portions of the Order to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to District Court Judge of Record. Failure to timely file objections to the Order set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Order.

The Clerk of the Court is directed to transmit a copy of this Order to parties who appear *pro se* and any counsel of record, as applicable.

**IT IS SO ORDERED.**
DATED: February 11, 2011                    /s/ *James E. Seibert*
                                            JAMES E. SEIBERT
                                            UNITED STATES MAGISTRATE JUDGE